UNITED STATES, Appellee

v.

Richard F. McDANIEL, Technical Sergeant, U.S. Air Force, Appellant.

No. 68,324.
CMR No. 29900.

U.S. Court of Military Appeals.

Argued Nov. 3, 1993.

Decided May 6, 1994.

For Appellant: *Captain Ursula P. Moul* (argued); *Colonel Terry J. Woodhouse* (on brief); *Colonel Jay L. Cohen* and *Major Mary C. Yastishock.*

For Appellee: *Captain Jane M.E. Peterson* (argued); *Colonel Richard L. Purdon, Colonel Jeffery T. Infelise, Captain David C. Wesley* (on brief).

*Opinion of the Court*

WISS, Judge:

A general court-martial comprised of a military judge alone convicted appellant, pursuant to his pleas, of dereliction in the performance of duties, wrongfully videotaping certain female applicants for enlistment (8 specifications), and attempted wrongful videotaping of a certain female applicant for enlistment, in violation of Articles 92, 134, and 80, Uniform Code of Military Justice, 10 USC §§ 892, 934, and 880, respectively. The military judge sentenced appellant to a bad-conduct discharge, confinement for 1 year, and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Military Review affirmed.

On appellant's petition for review, this Court specified the following issue:

WHETHER THE MILITARY JUDGE ERRED WHEN HE CONCLUDED THAT [FOR PURPOSES OF SENTENCING] THE MOST CLOSELY RELATED OFFENSE TO PHOTOGRAPHING NUDE WOMEN WITHOUT THEIR PERMISSION WAS INDECENT ACTS

RATHER THAN DISORDERLY CON-
·DUCT (VOYEURISM).

On the reasoning below, we now hold that he did not.

Appellant was an Air Force recruiter whose duty included processing applications and weighing recruits. He concocted a scheme to videotape female applicants in the nude by using a camcorder that he covertly placed in a storage room in which the scales were located. At a certain point in the re-cruitment process, appellant typically in-structed the recruit to go into the room, disrobe, and stand on the scale. From out-side the room, he instructed the recruit to change positions on the scale or to bounce up and down, ostensibly to get an accurate weight measurement but in reality to get a fuller recorded view.

Appellant videotaped 14 women in this manner and edited the tape to include only their disrobing, weighing, and dressing again. He fully confessed to his scheme after an undercover sting operation by the Air Force Office of Special Investigations, prompted by a report from one of the recruits who saw the glass lens of the camera in the box in which it was hidden. He admitted that the video-taping was without the knowledge or consent of the recruits.

Pertinent to this appeal, appellant was charged with 7 specifications of wrongfully videotaping particularly named women and with an eighth specification of wrongfully videotaping "at least seven unknown wom-en." As well, he was charged in each in-stance with committing indecent acts with the woman or women in question by video-taping them nude or semi-nude. By pretrial agreement, appellant pleaded guilty to the former, and the convening authority with-drew the latter. Repeatedly during the providency inquiry, he admitted that his ac-tions were indecent.

■ At the point at which the military judge sought the views of counsel as to the maximum imposable sentence, a dispute arose over the nature of the videotaping of-fenses and, thus, the maximum confinement for which appellant was liable. Since wrong-fully videotaping a woman is not specifically listed in Part IV of the Manual for Courts–Martial, United States, 1984, the maximum punishment for that offense is that which is provided in Part IV for the listed offense to which it is most "closely related." RCM 1003(c)(1)(B)(i), Manual, *supra.*

Defense counsel urged that the offense to which appellant's was most closely related was disorderly conduct, *viz.* voyeurism. *See generally United States v. Foster,* 13 MJ 789, 796 (ACMR) (window peeping as disorderly conduct), *pet. denied,* 14 MJ 206 (1982); *United States v. Johnson,* 4 MJ 770 (ACMR 1978) (voyeurism as disorderly conduct); *United States v. Manos,* 24 CMR 626, 628–29 (AFBR 1957) (window peeping as disorderly conduct); *United States v. Clark,* 22 CMR 888, 890 (AFBR) (window peeping as disor-derly conduct), *pet. denied,* 7 USCMA 790, 22 CMR 331 (1956). Trial counsel, on the other hand, argued that appellant's acts, under the circumstances where his videotaping was of nude women who acted pursuant to his in-structions, were analogous to the offense of committing indecent acts with another.

The dispute had no possible consequence on the findings, in light of appellant's ex-pressed indication that he would plead guilty regardless of the judge's ruling in this mat-ter. *See generally United States v. Heming-way,* 36 MJ 349, 353 (CMA 1993) (look at all the circumstances to determine whether mis-apprehension of maximum sentence affected guilty plea or, instead, was insubstantial fac-tor in decision to plead). The potential con-sequence on the sentence, however, was sub-stantial: Each specification of disorderly con-duct would be punishable by confinement and two-thirds' forfeitures per month for 4 months, while each specification of commit-ting indecent acts would be punishable by dishonorable discharge, confinement for 5 years, and total forfeitures. *Compare* paras. 73e(1)(a) *with* 90e, Part IV, Manual, *supra.* After full litigation of the question, the mili-tary judge ultimately treated the offenses as being more related to indecent acts.

■ Ironically, in arguing this dispute in this Court, both sides place pivotal reliance

upon *United States v. Thomas,* 25 MJ 75 (CMA 1987). Appellant cites *Thomas* to require that the offense of indecent acts with another requires that the acts be done "in *conjunction or participating with another person.*" 25 MJ at 76. From this premise, appellant argues that there was no minimal participation by appellant with the recruits, so appellant's conduct fails the *Thomas* standard. Accepting appellant's correctly stated premise, the Government argues that the facts reflect that there was sufficient participation by appellant with the recruits here.

■■■ We agree with the Government. What constitutes this offense is quite simple: That the accused committed a wrongful act with another person; that the act was indecent; and that under the circumstances the act was prejudicial to good order and discipline or service-discrediting. Para. 90b, Part IV, Manual, *supra.* An accused acted "with another person" if he acted in conjunction with or participated with the other person.

It is *appellant's participation* with the recruits in the admittedly indecent acts—that is, his *instructing* them to disrobe, to change positions, and to bounce up and down—that satisfies the elements of this offense. *See* 25 MJ at 77. Indeed, it is abundantly clear that none of the actions here would have occurred except for appellant's affirmative interaction with the recruits, as distinguished from mere voyeurism in which the actions occur independent of any control or stimulus by the accused, who acts merely as a witness to them. The following footnote in the Government's brief makes the distinction even more vividly:

> Had appellant merely videotaped these women without their knowledge and without doing anything to cause them to disrobe or pose, we submit that he would have engaged in a "high tech" equivalent of voyeurism.[*]

Answer to Final Brief at 3 n. 2. But appellant did more.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and GIERKE concur.

---

* On the facts of this case, we do not need to reach the question whether repeated viewing of such a videotape by an accused or an accused's showing of the videotape to someone else is something more than a single " 'high tech' equivalent of voyeurism."