# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist CEY BRISTOL J. WILLIAMS**
**United States Army, Appellant**

ARMY 20140401

Headquarters, United States Army Combined Arms Support Command
James W. Herring, Military Judge (arraignment & motions)
Tyesha L. Smith, Military Judge (trial)
Colonel Ralph J. Tremaglio III, Staff Judge Advocate

For Appellant:  Major Christopher D. Coleman, JA (argued); Lieutenant Colonel Jonathan F. Potter, JA; Major Aaron R. Inkenbrant, JA; Captain J. David Hammond, JA (on brief).

For Appellee:  Captain Tara E. O'Brien, JA (argued); Colonel Mark H. Sydenham, JA; Major Steven J. Collins, JA; Captain Tara E. O'Brien, JA (on brief).

30 March 2016

------------------------------------
OPINION OF THE COURT
------------------------------------

CAMPANELLA, Judge:

A panel consisting of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of wrongful sexual contact, seven specifications of indecent exposure, one specification of abusive sexual contact, and one specification of indecent language, in violation of Articles 120, 120c, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 920c, 934 (2006 & 2012) [hereinafter UCMJ].  The panel sentenced appellant to a bad-conduct discharge, confinement for nine months, forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for eight and a half months, forfeiture of all pay and allowances, and reduction to the grade of E-1.

This case is before us for review pursuant to Article 66, UCMJ.[1]  Appellant raises one assignment of error which warrants discussion and relief.  We find the matters raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), however, to be meritless.

## BACKGROUND

Appellant was charged with and convicted of seven specifications of indecent exposure.  Two of the specifications are not at issue here.[2]  The remaining five specifications involve appellant showing a digital image of his penis to his victims.

In four of these instances, appellant took his cell phone, turned the screen toward the female victim, and showed each victim a digital image of what the victims believed to be appellant's penis.

The last indecent exposure specification at issue involved appellant sending a victim a text message with an attachment containing a digital image of his penis.  What precipitated appellant sending this digital image was a discussion regarding circumcision that occurred earlier in the day with members of his office.  Soon after the conversation, SPC SB received a text message from appellant stating, "Thanks for showing love to uncircumcised dudes."  Attached to the text message was a digital image of his uncircumcised penis.

In each instance, the digital image was a picture of an erect penis.  While the digital image did not include identifying features, in at least one instance, appellant said, "That's me" to the victim when he showed her the digital image.  Appellant also admitted in his statement to Criminal Investigations Command (CID) there were photographs of his genitals on his cell phone.  Later, several digital images were recovered from appellant's cell phone that were consistent with the victim's descriptions.

For each of the charged exposures, when appellant either displayed or sent the digital images of his penis to the victims, he was fully clothed at the time he showed the image or sent it.  The government presented no evidence as to when appellant's

---

[1] Oral argument in this case was heard in East Lansing, Michigan, on 13 January 2016 at the Michigan State University College of Law as part of the Outreach Program of the United States Army Court of Criminal Appeals.

[2] The two indecent exposure specifications not at issue involve appellant standing on his back deck and exposing his penis to his neighbor and her daughter.  This was a *live* display of actual genitalia.

penis was photographed or whether anyone was physically present at the time he actually exposed his penis in order to take the digital images.

Four of the five indecent exposure specifications at issue were charged under the new Article 120c(c), UCMJ statute, effective 28 June 2012. These specifications involved appellant either showing a digital image of his penis already stored on his cell phone or sending a previously taken digital image of his penis via text message. The remaining specification was charged under the 2006 indecent exposure statute (Article 120(n), UCMJ). This specification also involves showing a previously created digital image.

Before entering pleas, the defense moved to dismiss these specifications under Rule for Court-Martial [hereinafter R.C.M.] 907(a). Defense counsel argued appellant's conduct in merely showing victims a photograph of his penis was not sufficient to constitute "exposure" for purposes of indecent exposure under Article 120(n), UCMJ or Article 120c(c), UCMJ. After considering motions and arguments from counsel, the military judge noted that although he found no case law on point, he interpreted existing precedent to stand for the proposition that showing a digital image or sending a digital image via electronic means could constitute a basis for an indecent exposure charge. The military judge denied the defense motion to dismiss.

After the close of the government's case-in-chief, the defense moved to dismiss the same specifications pursuant to R.C.M. 917. Defense counsel reiterated his arguments that the statute contained a "temporal" requirement and that appellant never exposed his actual live genitalia to the victims. The military judge denied the motion. The panel subsequently found appellant guilty of all the indecent exposure charges and specifications.

## LAW AND DISCUSSION

### *Legal Sufficiency*

We review questions of statutory interpretation and issues of legal sufficiency de novo. *United States v. Vargas*, 74 M.J. 1, 5 (C.A.A.F. 2014) (statutory interpretation); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (legal sufficiency). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In resolving questions of legal sufficiency, we are "bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

*Indecent Exposure*

"[T]he purpose of criminalizing public indecency 'is to *protect the public* from shocking and embarrassing displays of sexual activities.'" *United States v. Graham,* 56 M.J. 266, 269 (C.A.A.F. 2002) (internal citations omitted). The 2006 version of indecent exposure, Article 120(n), UCMJ, consists of the following elements:

> (a) That the accused exposed his or her genitalia, anus, buttocks, or female areola or nipple;
>
> (b) That the accused's exposure was in an indecent manner;
>
> (c) That the exposure occurred in a place where the conduct involved could reasonably be expected to be viewed by people other than the accused's family or household; and
>
> (d) That the exposure was intentional.

*Manual for Courts-Martial*, *United States* (2012 ed.) [hereinafter *MCM*, 2012], Punitive Articles Applicable to Sexual Offenses Committed During the Period 1 October 2007 Through 27 June 2012, app. 28, at A28-9.[3] The 2012 version of the

---

[3] Prior to 1 October 2007, indecent exposure was an Article 134 offense requiring:

> (1) That the accused exposed a certain part of the accused's body to public view in an indecent manner;
>
> (2) That the exposure was willful and wrongful; and
>
> (3) That, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*MCM*, 2012, Punitive Articles Applicable to Sexual Offenses Committed Prior to 1 October 2007, app. 27, at A27-3. The explanation in the *MCM* explained that "willful" meant "an intentional exposure to public view." Historically, the government could demonstrate willfulness in one of two ways: (1) the exposure occurs in a place "so public that it must be presumed it was intended to be seen by

(continued . . .)

4

statute, Article 120c(c), encompasses the 2006 version of indecent exposure with the exception of one element. Congress sought to expand the statute and criminalize "situations in which the exposure is indecent – even if committed in a place where it would not be reasonably be [sic] expected to be viewed by people other than members of the actor's family or household." *MCM*, 2012, app. 23, at A23-17.

The issue presented herein is whether the term "exposed" under Article 120(n), UCMJ, or Article 120c(c), UCMJ, encompasses showing a person a photograph or digital image of one's genitalia. "Exposure" is not specifically defined by Article 120(c), UCMJ, Article 120(n), UCMJ, or under the prior Article 134, UCMJ statute.

In the absence of a statutory definition, we look to whether the language has a plain and unambiguous meaning. The plain language of a statute will control unless it is ambiguous or leads to an absurd result. *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007).

> Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, "[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole."

*United States v. Schloff*, 74 M.J. 312, 315 (C.A.A.F. 2015) *dissent* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)) (internal citation omitted).

In this case, using the plain meaning of the term "expose," we conclude, at some point appellant exposed his penis to his cell phone camera when the digital pictures were taken. Later, on four separate occasions, he displayed those digital images of his penis to various persons, showing them the digital image on his cell phone as he held the cell phone up to their view. On another occasion, he sent a digital image of his penis via text message to a different victim. We find as a matter of law, these displays do not constitute an exposure for the purposes of these statutes because appellant did not 'expose' his actual live genitalia for view by the victims. To that extent, we agree with defense that a temporal and physical presence aspect

---

(. . . continued)
others," or (2) the exposure is accompanied "by some action by which [the accused] draws attention to his exposed condition." *See Graham*, 56 M.J. at 268 (internal citations omitted). "Drawing attention" can include "motions, signals sounds or other actions . . . designed to attract attention to his exposed condition . . . ." *Id*.

exists regarding this offense: violations occur when a victim is present to view the *actual* body parts listed in the statutes, not images or likenesses of the listed parts.[4] Including the display of digital images or photographs of a person's genitalia within the term "expose" does not clearly support the underlying purpose of criminalizing indecent exposure. We also note that there is an added danger and discomfort when people physically expose in the presence of their victims as opposed to displaying or sending people a pornographic picture. Therefore, we find the term "exposed" is ambiguous under both Article 120(n), UCMJ, and Article 120c(c), UCMJ.

Because the definition of "exposure" in this statute is unclear, we attempt to ascertain Congress's intent from traditional sources of statutory construction. *See United States v. King*, 71 M.J. 50, 52 (C.A.A.F. 2012). Statutory meaning can also be determined from looking at the broader statutory context. *See United States v. McPherson,* 73 M.J. 393, 395-96 (C.A.A.F. 2014); *see also United States* v. *McGuinness,* 35 M.J. 149, 153 (C.M.A. 1992). Additionally, although the rule of lenity is a rule of last resort, if ambiguity still remains, it *must* be resolved in favor of the accused.[5] *See United States v. Thomas,* 65 M.J. 132, 135-38 (C.A.A.F. 2007) (emphasis added).

*2006 Version of Indecent Exposure, Article 120(n)*

The word "expose," in the context of the common law offense of indecent exposure, required the exposure to occur in the actual presence of the victim or the public. 50 AM. JUR. 2d *Lewdness, Indecency, and Obscenity* § 17 (1995) (citations omitted). Under a strict common law definition, an exposure committed through digital technology outside the presence of a victim does not constitute the offense of indecent exposure. At the time of the enactment of the 2006 version of the statute, there was confusion regarding the use of modern technology such as cell phones and computers to commit an indecent exposure. *See United States v. Ferguson*, 68 M.J. 431, 435 (C.A.A.F. 2010) *dissent* (noting confusion in the courts on interpreting the indecent exposure statute in the "internet age.").

---

[4] We note that under the dissent's definition of "to cause visible or open to view" showing another a magazine centerfold in which genitalia is exposed could constitute an indecent exposure—that is too broad of a result.

[5] The government has cited no authority nor has this court found any case law standing for the proposition that displaying a hard copy photograph of one's self or even another's nude body to a victim (re: in times prior to the digital age) constituted an indecent exposure for purposes of the statutes referenced in this opinion.

In at least one case, our superior court found an indecent exposure could occur when an exposure is accomplished using 'communication technology' and there is a *live* display of actual genitalia. *Id*. at 434-35 (affirming the appellant's Article 134 conviction for indecent exposure based on his transmission of live internet webcam images).[6] In *Ferguson*, the appellant masturbated and ejaculated live in front of his computer webcam to an on looking police officer posing as a minor. *Id*. at 432. The live video exposing his naked body and erect penis while masturbating were transmitted in real time over the internet through his computer using an instant messenger program. *Id*. at 432-33. The three-judge majority in *Ferguson* resolved the case on very narrow grounds focusing its rationale on the "public view" element. *Id*. at 434-35. Ferguson pleaded guilty to indecent exposure and did not raise the issue of the providency of his plea to the Court of Criminal Appeals. *Id*. at 432. The United States Court of Appeals for the Armed Forces (CAAF) simply held that there was not a substantial basis in law or fact to question Ferguson's guilty plea.[7] *Id*. at 433-35.

In the present case, the sole specification of indecent exposure charged under Article 120(n), UCMJ, involved appellant taking his cell phone, turning the screen toward a victim, and revealing a digital image of his exposed erect penis. Although appellant likely used his cell phone to capture a digital image of his erect penis, there was no live display of actual genitalia as he showed the image to the victim.[8]

---

[6] We recognize that in the guilty plea case *of United States v. Hughes,* Army 20120075, 2013 CCA LEXIS 610, at *5 (Army Ct. Crim. App. 14 Aug. 2013) (sum. disp.), a panel of this court affirmed the holding that the appellant's transmission of a digital image of his penis over the internet was an indecent exposure. We find this unpublished opinion neither persuasive nor precedential.

[7] Judge Erdmann found that the law enforcement officer "specifically invited and consented to the exposure" and concluded that the facts in this case "do not meet the legal requirements of indecent exposure as defined in the *MCM* and [the CAAF]" leaving the requirement of indecent exposure an open question. *Ferguson*, 68 M.J. at 438 (J. Erdmann, dissenting).

[8] *See United States v. Quick*, 74 M.J. 517, 521 (N.M. Ct. Crim. App. 2014), finding no legal support to apply an expansive reading of Article 120c(a)(1), UCMJ, to criminalize the viewing of *a visual recording of* the victim's private area. In *Quick*, a smart phone was used to video record sexual acts committed by the appellant and two others. *Id*. at 519. After the sexual encounter, the appellant viewed and requested the video to be forwarded to him. *Id*. The appellant was subsequently charged with and convicted of knowingly and wrongfully viewing an indecent visual recording in violation of Article 120c(a)(1), UCMJ; *See generally United States v.*

(continued . . .)

In other words, what was exposed or shown was not the statutorily required body parts but instead a picture of those body parts. Additionally, unlike *Ferguson*, appellant preserved the issue by contesting this charge and specification at trial, and objecting to the legal sufficiency of the evidence.[9]

In the absence of unambiguous legislative intent or clear precedential legal support to apply an expansive reading to the plain language of Article 120(n), UCMJ, we find the evidence legally insufficient to sustain a conviction for indecent exposure. Under the circumstances, we also find an ambiguity in the Article 120(n), UCMJ, statute as applied to appellant's case. In accordance with the rule of lenity, we resolve this issue in favor of appellant. We therefore dismiss Specification 2 of Charge I.[10]

### *2012 Version of Indecent Exposure, Article 120c(c)*

The legislature is presumed to act "intentionally and purposefully" when it includes language in one section but omits it in another. *United States v. Wilson,* 66 M.J. 39, 45-46 (C.A.A.F. 2008). In 2012, Congress substantially revised the Article 120 statute as a whole. *See generally*, *MCM*, 2012, app. 23, at A23-15. Under the same 2012 revision of the Article 120, UCMJ statute, in the closely related offense of sexual abuse of a child, it is clear that an exposure may be committed using communication technology.[11] The pertinent part of the offense of sexual abuse of a

---

(. . . continued)
*McDaniel*, 39 M.J. 173, 175 (C.M.A. 1994) (noting the appellant's actual presence or participation with the victim is a distinction between the offense of indecent acts with another and voyeurism).

[9] It is arguable whether the cell phone was used as "communication technology" because appellant showed a digital image on the cell phone, instead of using "communication technology" on the device to *transmit* the image. *See generally MCM*, 2012, app. 23, at A23-16.

[10] Our holding does not stand for the proposition that appellant's misconduct does not constitute a violation of a different Article of the UCMJ. Our view only applies to the government's charging decision herein.

[11] The analysis section of the 2012 adoption of Article 120b, UCMJ, 10 U.S.C. § 920b, in the *Manual* states:

> The new "Sexual Abuse of a Child" offense . . . was
> intended to consolidate [all indecency crimes against

(continued . . .)

8

child, "lewd act," is defined as "intentionally exposing one's genitalia, anus, buttocks, or female areola or nipple to a child *by any means, including via any communication technology*, with an intent to abuse, humiliate, or degrade any person, or to arouse or gratify the sexual desire of any person." UCMJ art. 120b(h)(5)(B) (emphasis added). This language that expands what qualifies as an exposure is notably absent from the revised 2012, Article 120c(c), UCMJ, offense of indecent exposure. Congress' distinction between the offenses is clear when the victim is a child. Congress has indicated a strong societal interest in protecting children from pornographic images thrust upon them by predatory adults via the internet. Thus, Congress expanded the definition of exposure as it relates to children—eliminating the requirement for the actual display of live genitalia. That heightened societal interest, however, does not extend to adults.

"[W]hen 'Congress includes particular language in one section of a statute but omits it in another'—let alone a closely related offense—we 'presume' that Congress intended a difference in meaning." *Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014) (quoting *Russello v. United States,* 464 U.S. 16, 23 (1983)). Accordingly, because Congress included offenses committed via "any communication technology" in sexual abuse of a child, but not in the offense of indecent exposure, and both sections of the statute were revised at the same time, we can only conclude that Congress specifically intended this distinction.[12]

---

(. . . continued)

> children] by expanding the definition of "lewd act" to include . . . indecent exposure to a child. . . . [It] now include[s] offenses committed *via any communication technology* to encompass offenses committed via the internet (such as exposing oneself to a child by using a webcam), cell phones, and other modern forms of communication. This change expands the pre-2012 definition of "indecent liberty" which proscribed conduct only if committed in the physical presence of a child.

*MCM*, 2012, app. 23 at A23-16 (emphasis added).

[12] Our superior court also mentioned this distinction when comparing the offense of sexual abuse of a child, Article 120(b)(h)(5), UCMJ, and the 2006 version of indecent exposure, Article 120(n), UCMJ stating:

> Indecent exposure is more general than sexual abuse of a child: it protects both child and adult victims. And while the conduct of a sexual abuse of a child offense may be

(continued . . .)

After considering the statute as a whole, we conclude Congress did not intend to criminalize an "exposure" through communication technology under Article 120c(c), UCMJ.[13]  Further, we note that Article 120c, UCMJ, is not silent on the issue of photographing private areas or electronically transmitting images.  Congress used clear and unambiguous language to expressly proscribe the making and distributing of indecent visual recordings.  *See* UCMJ art. 120c(a)(2); *see also* UCMJ art. 120c(c)(5).

Because we find appellant's convictions in violation of Article 120c(c), UCMJ, do not comport with Congressional intent or case law, we find the evidence legally insufficient.  Accordingly, we dismiss Specifications 1-4 of Charge II.

*Reassessment*

In determining whether we can reassess the sentence, we apply several non-exhaustive factors:

> (1)  Dramatic changes in the penalty landscape and exposure.
>
> (2)  Whether an appellant chose sentencing by members or a military judge alone.  As a matter of logic, judges of the courts of criminal appeals are more likely to be certain of what a military judge would have done as opposed to members.  This factor could become more relevant where charges address service custom, service discrediting conduct or conduct unbecoming.

---

(. . . continued)

> committed using a form of communications technology, it is not so clear whether that is permissible for the offense of indecent exposure, which requires that the accused's exposure occurred "in a place where the conduct involved could reasonably be expected to be viewed by people other than the accused's family or household."

*United States v. Busch,* 75 M.J __, at *5 (C.A.A.F. 29 Jan. 2016) (J. Stucky, dissenting)

[13] Additionally, as previously stated, the *Ferguson* case is distinguishable because it involved an Article 134, UCMJ offense of indecent exposure and not an Article 120c(c), UCMJ or Article 120(n), UCMJ offense.  *Ferguson* was also a guilty plea that focused on the "public view" element.

(3) Whether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses and, in related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses.

(4) Whether the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial.

*United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) (internal citations omitted).

First, appellant faced a maximum punishment of a dishonorable discharge, fifteen years and six months confinement, total forfeiture of pay and allowances, and reduction to E-1 prior to the reversal of his convictions for indecent exposure. Appellant still faces a maximum punishment of a dishonorable discharge, eleven years and six months confinement, total forfeiture of pay and allowances, and reduction to E-1. This does not constitute a dramatic change in the penalty landscape. Second, appellant was sentenced by a panel. Third, appellant's criminal conduct remains significant: he is convicted of one specification of wrongful sexual contact; two specifications of indecent exposure; one specification of abusive sexual contact; and one specification of indecent language. Additionally, appellant remains convicted of a specification of abusive sexual contact, which carries the greatest maximum possible confinement of seven years. Fourth, we have familiarity and experience with the remaining offenses to reliably determine what sentence would have been imposed at trial. After weighing these factors, we are confident that we can reassess the sentence in this case.

**CONCLUSION**

On consideration of the entire record, the findings of guilty of Specification 2 of Charge I and Specifications 1-4 of Charge II are set aside and dismissed. The remaining findings of guilty are AFFIRMED.

Reassessing the sentence on the basis of the errors noted, the entire record, and in accordance with the principles of *Winckelmann*, 73 M.J. at 15-16, we affirm only so much of the sentence as provides for a bad-conduct discharge, confinement for six months and fifteen days, forfeiture of all pay and allowances, and a reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision, are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

WILLIAMS—ARMY 20140401

Judge CELTNIEKS concurs.

TOZZI, Senior Judge, dissenting:

I respectfully dissent from the ruling of the majority dismissing Specification 2 of Charge I and Specifications 1-4 of Charge II.

In my view, the definition of expose in Article 120(n), UCMJ, and Article 120c(c), UCMJ, is unambiguous, and appellant's convictions for indecent exposure in Specification 2 of Charge I and Specifications 1-4 of Charge II should be affirmed on that basis. Additionally, the evidence in this case is legally sufficient to support appellant's conviction. The reasoning of the majority in dismissing these specifications evinces an erroneous interpretation of the plain meaning of the term "expose," a flawed statutory construction analysis, and a failure to apply the applicable case law of this court as well as our superior court.

Appellant exposed his genitalia to unsuspecting victims in each of the specifications at issue either by showing them a digital image of his erect penis on his cell phone while in their presence, or in one specification by transmitting a text message with a digital image of his erect penis. Appellant exposed his genitalia to each victim at the time he displayed or sent them a digital image of his penis, not, as the majority would have it, when the pictures of appellant's penis were initially taken.

This case turns largely on the definition of "expose" in Article 120(n), UCMJ and Article 120c(c), UCMJ. Congress did not define the term "expose" in either version of Article 120, UCMJ. When Congress has not supplied a definition, we generally give a statutory term its ordinary meaning. *Yates v. United States*, 135 S.Ct. 1074, 1091 (2015) (Kagan, J., dissenting) (internal citations omitted). The ordinary meaning of expose in *Merriam-Webster*, in pertinent part, reads "to make known: bring to light . . . to cause to be visible or open to view . . . to exhibit for public veneration . . . to reveal the face of (a playing card) or the cards of (a player's hand) . . . to engage in indecent exposure (of oneself)." Merriam-Webster, http://www.merriam-webster.com/dictionary/expose (last visited Mar. 9, 2016). We must view this definition in the context of the facts of our case, and determine if the statutory language has a plain and unambiguous meaning with regard to the dispute at hand. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). If the statutory language is unambiguous our inquiry ends. *Id.* To determine if a statutory term is unambiguous we reference the language itself as well as "…the specific context in which that language is used, and the broader context of the statute as a whole." *Yates*, 135 S.Ct. at 1082 (internal citation omitted).

Neither the dictionary definition of the word expose nor Article 120, UCMJ, contain limiting or qualifying words that would require a particular means of exposure. *See generally United States v. Schloff*, 74 M.J. 312, 314 (C.A.A.F. 2015). We also note that the term expose is used several times in the *MCM* consistent with its ordinary dictionary meaning.[14] *See* UCMJ art. 127c(2); *see* UCMJ art. 108c.(2); *see MCM*, 2012, Punitive Articles Applicable to Sexual Offenses Committed During the Period 1 October 2007 Through 27 June 2012, app. 28, at A28-3. Had Congress intended to limit the term exposure to any particular means they would have done so. In addition, this court held that an appellant's transmission of a digital image of his penis over the internet was an exposure within the plain and ordinary meaning of the term expose, relying primarily upon a majority view held by state courts on this issue. *United States v. Hughes*, Army 20120075, 2013 CCA LEXIS 610 at *5 (Army Ct. Crim. App. 14 Aug. 2013) (sum. disp.) (citing *State v. Bouse*, 150 S.W. 3d 326, 329-35 (Mo. App. 2004)). Our superior court similarly affirmed an indecent exposure conviction of an appellant who transmitted images of his erect penis over the internet. *United States v. Ferguson*, 68 M.J. 431, 434-35 (C.A.A.F. 2010). Because I find no ambiguity in the plain and ordinary meaning of the term "expose," I find no basis to ascertain Congress's intent from applying the canons of statutory construction.

Assuming *arguendo* that "expose" is ambiguous in the context of indecent exposure under Article 120(n) and Article 120c(c), UCMJ, the absence of further guidance from Congress on this issue is instructive. The majority places great weight on the fact that in the most recent revision of Article 120, UCMJ Congress added language to the definition of lewd act with a child to include "intentionally exposing one's genitalia, anus, buttocks, or female areola or nipple to a child by any means, including via any communications technology, with an intent to abuse, humiliate, or degrade any person, or to arouse or gratify the sexual desire of any person." *MCM*, 2012, pt. IV, ¶ 45b.a.(h)(5)(B). This language is not dispositive in the context of indecent exposure for several reasons. First, this language must be read in the context of Congress' desire to reach illicit activity with children, who are becoming more proficient with communications technology at early ages. Secondly, at the same time Congress was revising the definition of lewd act with a child as delineated above, it revised the elements of indecent exposure, creating the current Article 120c(c), UCMJ. The simultaneous revision of these two provisions, coupled with the absence of similar language in Article 120c(c), UCMJ, and the absence of the promulgation of a definition of "exposed" or "exposure" indicates an

---

[14] For example, in the offense of extortion, the word "expose" is used consistent with the following *Merriam-Webster* dictionary definitions: "to make known: bring to light" or "to cause to be visible or open to view." UCMJ art. 127c.(2).

unwillingness on the part of Congress to disrupt the state of the law. In short, Congress chose not to act, and this court should respect its prerogative.

In addition, the common law definition of "expose" required physical presence. *See* 50 AM. JUR. *2d Lewdness, Indecency, and Obscenity* § 17 (1995) (citations omitted). Although *Ferguson* supports the proposition that physical presence is not required, appellant *was* physically present when he displayed the digital image of his erect penis on his cell phone to four of the victims. *See Ferguson*, 68 M.J. at 434-35; *see also Hughes*, 2013 CCA LEXIS 610, at *5 (interpreting *Ferguson* and stating: "An indecent exposure can occur when the exposure is accomplished electronically and not by physical presence."). Thus, four of the five specifications here meet the common law definition of expose.

Finally, this case involves appellant exposing his erect penis to four victims by showing them a picture of his penis on his cell phone while physically in their presence, and by transmitting an image of his erect penis to another victim by text message attachment. It does not involve artistic depictions of genitalia, a magazine centerfold depicting genitalia, or anything else of the kind. The facts are not complex, the definition of expose is unambiguous, the intent of Congress is clear, the case law of this court is persuasive, and the precedent of our superior court is controlling. I would affirm the findings and sentence as adjudged.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court