# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————————

**No. 201500404**

———————————————

## UNITED STATES OF AMERICA
Appellee

v.

## ALEX URIOSTEGUI
Lance Corporal (E-3), U.S. Marine Corps
Appellant

———————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Eugene H. Robinson, Jr., USMC.
For Appellant: Commander Brian L. Mizer, JAGC, USN.
For Appellee: Lieutenant Commander Jeremy R. Brooks, JAGC, USN;
Captain Cory A. Carver, USMC.

———————————————

Decided 29 September 2016

———————————————

Before CAMPBELL, RUGH, AND HUTCHISON, *Appellate Military Judges*

———————————————

PUBLISHED OPINION OF THE COURT

———————————————

CAMPBELL, Senior Judge:

Consistent with the appellant's guilty pleas at a general court-martial, a military judge convicted him of an attempted sexual assault of a child, two attempted sexual abuses of a child, an attempted receipt of child pornography, and an indecent exposure—violations of Articles 80 and 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880 and 920c (2012). The military judge sentenced the appellant to 24 months' confinement, total forfeitures, reduction to pay grade E-1, a reprimand, and a dishonorable discharge. Pursuant to a pretrial agreement, the convening authority disapproved the dishonorable discharge and reprimand, but approved a bad-conduct discharge and the remaining sentence as adjudged.

In the lone assignment of error, the appellant contends that his civilian defense counsel (CDC) was not present to represent him as required when the CDC

participated in a court-martial session via speaker phone, and, consequently, his convictions must be reversed without the need for a further showing of prejudice.

We specified for briefing three additional issues related to the appellant's convictions involving efforts to send a 15-year-old girl a picture of his exposed penis: 1) whether the terms "exposing" under Article 120b(h)(5)(B), UCMJ, and "exposes" under Article 120c(c), UCMJ, encompass the electronic transmission of a photograph or digital image of one's genitalia to another person; 2) whether the military judge abused his discretion in accepting the appellant's guilty plea to Charge II and its sole specification[1] in light of *United States v. Ferguson*, 68 M.J. 431 (C.A.A.F. 2010) and *United States v. Johnston*, 75 M.J. 563 (N-M. Ct. Crim. App. 2016); and 3) whether the appellant's conviction for Charge I, Specification 6,[2] as well as Charge II and its sole specification was an unreasonable multiplication of charges.

While we partially agree with the appellant's assignment of error, prejudice is required for relief, and we find none. But we find his guilty plea to indecent exposure improvident and take corrective action in our decretal paragraph. Following our corrective action, we find the remaining findings and the reassessed sentence to be correct in law and fact and that no error materially prejudicial to the appellant's substantial rights remains.

## I. BACKGROUND

In late September 2014, while stationed in Japan, the appellant began communicating via an anonymous electronic messaging application with an on-line profile that, unbeknownst to him, was part of an undercover Naval Criminal Investigative Service (NCIS) operation. He sent sexually explicit text messages and nude pictures of himself to what he believed to be a 15-year-old girl and solicited her for child pornography. In early December 2014, he traveled to meet the 15-year-old at a location aboard Camp Hansen, intending to have various forms of sex with her. Instead, he was apprehended by NCIS upon his arrival.

The appellant was represented by a Marine Corps detailed defense counsel, Captain P, at his 19 June 2015 arraignment. Shortly afterwards, he hired a CDC in the United States.[3] On 5 August 2015, the CDC emailed the military judge, copying the Government and Captain P, "to bring a scheduling conflict to the court's

---

[1] Indecent exposure in violation of Article 120c(c), UCMJ, in that the appellant did "intentionally expose his genitalia in an indecent manner."

[2] Attempted commission of sexual abuse upon a child in violation of Article 80, UCMJ, in that that the appellant did "attempt sexual abuse of a child by committing a lewd act, to wit: intentionally exposing his genitalia to an individual, who [the appellant] believed had not attained the age of sixteen years, with an intent to arouse and to gratify his sexual desire."

[3] The CDC's notice of appearance is dated 26 June 2015, and identifies a South Carolina business address.

attention" related to the CDC's own calendar and the appellant's pretrial motions court-martial session set for 14 August 2015.[4] The military judge responded by approving a two-day enlargement for the defense to file a motion, but indicated that the appellant's referred charges had precedence over any pending preliminary hearings under Article 32, UCMJ, in other cases. Should the motions date ultimately remain unchanged, the military judge suggested, "your client can either waive your participation at the [Article] 39(a)[, UCMJ, session,] or you can participate by telephone if you work that out with him."[5]

On 8 August 2015, the CDC filed a motion to compel the Government to provide a defense expert consultant—a psychologist who specializes "in determining and evaluating one's capacity to waive Miranda rights and level of suggestibility[.]"[6] Along with a second defense motion, it was litigated on 14 August 2015. At that court-martial session, the appellant's detailed defense counsel was present at counsel's table, and the CDC was "present via telephone."[7] As a preliminary matter, after the military judge asked, "Do you want to proceed with this hearing today with Captain [P] and Mr. [H] as your counsel?" the appellant responded, "Yes, Your Honor."[8] The CDC then began by addressing the defense's burden of persuasion, the five items of documentary evidence offered in support of the motion, and the intent for the appellant to testify for the limited purposes of the motion. Next, he explained to the military judge how the defense wanted to proceed:

> I think Captain [P] will handle the direct line of questioning of the accused. And I believe you should have all the documentary evidence that was walked through. But at this point in time now we would want to have the accused take the stand for the limited purposes and have Captain [P] actually conduct the direct examination.[9]

The appellant testified on direct, cross, re-direct, and re-cross examination before answering three questions posed by the military judge, which elicited no further questions by counsel for either party. The detailed defense counsel yielded to the CDC when the military judge asked if both parties were prepared to argue on the motion: "Yes, Sir. Mr. [H] will be arguing the rest at this point."[10] The military judge engaged the CDC on four occasions during the course of the initial defense

---

[4] Appellate Exhibit IX at 1.

[5] *Id.*

[6] AE VI at 7.

[7] Record at 11.

[8] *Id.* at 12.

[9] *Id.* at 14.

[10] *Id.* at 28.

arguments, and allowed the CDC additional argument on the motion following the Government's response.

There was no testimony related to the second litigated motion. It is not clear from the record whether the detailed defense counsel or the CDC provided the initial arguments on that motion.[11] But after the military judge asked for any additional matters which needed to be addressed before the session ended, the CDC was specifically recognized and afforded the final arguments on it, as well:

> No additional matters, sir. I apologize for the awkwardness of it, but just if you'd allow me just one saved round as it relates to argument for delay [sic] witnesses. . . . And I just want to make sure that the Court is aware of that. That was not discussed on the [sic] either argument, but I want to make sure the Court was aware of that.[12]

On 19 and 27 August 2015, the CDC and the appellant respectively signed a request for withdrawal of the CDC's representation.[13] The withdrawal letter indicated that "the accused would not be prejudiced by such withdrawal due to" the "continued representation" by "the detailed defense counsel for this matter," and that the CDC's "withdrawal would not necessitate a continuance in the case [since] the Government would not be prejudiced in anyway."[14] The parties reached a pretrial agreement on 28 August 2015,[15] obviating the need for the military judge to issue rulings on the two litigated motions.

---

[11] The transcript refers to the CDC as "DC" as opposed to "CC" on at least two instances where clearly the CDC was addressing the court. *Id.* at 14 and 42. The detailed defense counsel is referred to as "DC" throughout the record, and "CC" is never referenced again after the end of the CDC's argument on the first motion.

[12] *Id.* at 42.

[13] AE XII at 1.

[14] *Id.* At the next court-martial session, on 1 September 2015, before the guilty plea and sentencing later that day, the military judge said, "I see that you are here with Captain [P], your detailed defense counsel; however, your civilian counsel is not present. He has submitted . . . a letter of withdrawal indicating that the withdrawal is for good cause based on a breach of engagement letter between yourself and his law firm. So I now ask you: Do you want to proceed to trial today with Captain [P] as your counsel in this case?" The appellant replied, "Yes, sir." When the military judge then asked, "Do you desire to be represented by any other attorney, either military or civilian?" the appellant responded, "No, sir." Record at 43.

[15] AE X and XI. The CDC was not a signatory to the pretrial agreement.

4

## II. DISCUSSION

### A. Assistance of counsel

Based on three sources of authority—*United States v. Cronic*, 466 U.S. 648 (1984); RULE FOR COURTS-MARTIAL (R.C.M.) 805(c), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.); and Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7F, (JAGMAN) § 0135b (26 Jun 2012)—the appellant claims that he was denied the right to counsel when his CDC participated in the motions session telephonically, that prejudice is presumed, and that therefore his convictions must be reversed. We disagree.

We review ineffective assistance of counsel claims *de novo*. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015). Ordinarily, relief based on ineffective assistance of counsel requires the demonstration by an appellant that his counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

However, in *Cronic*, the Supreme Court concluded "that a trial is unfair if the accused is denied counsel," and noted that it "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." 466 U.S. at 659, 659 n.25 (citations omitted). At trial by courts-martial, "'preferral of charges' is the 'critical stage of the proceedings' which signals the attachment of an accused's 'Sixth Amendment right to counsel.'" *United States v. Maresca*, 28 M.J. 328, 332 n.6 (C.M.A. 1989) (quoting *United States v. Wattenbarger*, 21 M.J. 41, 43-45 (C.M.A. 1985), *cert. denied*, 477 U.S. 904 (1986)).

"[O]nly when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." *Cronic*, 466 U.S. at 662 (footnote omitted). Therefore, in order for the *Strickland* standard not to apply here, we must determine that the CDC's and detailed defense counsel's representation at the Article 39a session was a "complete denial of counsel" which "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing," or created circumstances where "the likelihood that any lawyer, even a fully competent one, could provide effective assistance [was] so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id.* at 659-60.

We hold that the circumstances of the appellant's motions session demonstrate that he was not denied representation, that his counsel did not fail to meaningfully function as the Government's adversary, and that the proceeding was not inherently

unfair. Consequently, the appellant can "make out a claim of ineffective assistance only by pointing to specific errors made by [his] counsel." *Id.* at 666.[16]

In that regard, R.C.M. 805(c) requires the presence of at least one qualified counsel for each party at all court-martial sessions. Otherwise, the rule authorizes additional counsel to participate remotely "by the use of audiovisual technology, such as video[ ]teleconferencing technology" during Article 39(a), UCMJ, sessions, "[i]f authorized by regulations of the Secretary concerned[.]" *Id.* The Secretary of the Navy has delegated the authority to authorize the presence of counsel by audiovisual technology to the Judge Advocate General of the Navy—who did so in JAGMAN § 0135b, which provides that "audiovisual technology will satisfy the 'presence' requirement of the accused only when the accused has a defense counsel physically present at his location[,]" and that "[s]uch technology may include two or more remote sites as long as all parties can *see* and hear each other." (Emphasis added).

Thus, although the military judge actually invited and then allowed them to do so, the civilian and military defense counsel violated R.C.M. 805(c) and JAGMAN § 0135b when the CDC used only a speakerphone instead of appropriate audiovisual technology to participate in the Article 39(a), UCMJ, session. In light of this violation, we test for prejudice. *See United States v. Hutchins*, 69 M.J. 282, 293 (C.A.A.F. 2011) (declining to find that the improper severance of originally detailed defense counsel "materially prejudiced the [appellant's] substantial rights").

Under the specific circumstances of this case, the appellant, without even attempting to meet the burden, has failed to show prejudice. The circumstances of the Article 39(a) session itself reveal none: the detailed defense counsel was physically present and actively participated in the courtroom; the defense made no objections to the lack of video teleconferencing; the need for the CDC to actually see the in-court testimony was reduced by the appellant being the only witness; the CDC argued responsively to the trial counsel's cross-examination, Government arguments on the motions, and the military judge's questions posed during the defense arguments; and the quality of the phone connectivity fostered the CDC's uninterrupted participation. Additionally, the Government's case was convincing even without the appellant's confession—the admissibility of which was challenged at the hearing. Finally, the defense motions were effectively withdrawn before the

---

[16] The Government seemingly suggests that the Supreme Court held a defense counsel's trial participation via speakerphone is not a complete denial of counsel for *Cronic* purposes in *Wright v. Van Patten*, 552 U.S. 120 (2008). Government Brief of 28 Apr 2016 at 15-16. For clarity, we note that *Van Patten* involved a writ standard under 28 U.S.C. § 2254(d)(1). *See Van Patten*, 552 U.S. at 128-29 (Stevens, J. concurring) ("I acquiesce in this Court's conclusion that the state-court decision was not an unreasonable application of clearly established federal law. In doing so, however, I emphasize that today's opinion does not say that the state courts' interpretation of *Cronic* was correct, or that we would have accepted that reading if the case had come to use on direct review . . . .").

military judge ruled on them, and were then waived by the appellant's unconditional guilty plea. *See United States v. Campos*, 67 M.J. 330, 331 (C.A.A.F. 2009).

## B. Indecent exposure

The sole specification of Charge II alleges that the appellant "intentionally expose[d] his genitalia in an indecent manner."[17] Before his conviction of that offense, the appellant explained his guilt to the military judge, testifying consistently with his Stipulation of Fact—in which he admitted to exposing himself via a "photograph"[18] that he "sent over an application [on his phone] . . . to a girl who he believed was fifteen years of age."[19]

### 1. *Standard of review*

We review a military judge's acceptance of a plea of guilty for an abuse of discretion, reversing only if the "record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citation omitted). There is a substantial basis in law to question a guilty plea if the appellant has "pled guilty to conduct that was not criminal." *Ferguson*, 68 M.J. at 433 (noting that "we should review" such an issue); *see also United States v. Phillips*, 70 M.J. 161, 165 (C.A.A.F. 2011) (noting that even after a guilty plea, "[t]here remains to be addressed the legal sufficiency" of the conviction.).[20]

Whether Article 120c(c), UCMJ, proscribes the appellant's electronic transmission of a photograph of his penis is a question of statutory interpretation which we review *de novo. United States v. Lopez de Victoria*, 66 M.J. 67, 73 (C.A.A.F. 2008). Article 120c(c), UCMJ, states, "[a]ny person subject to this chapter who intentionally exposes, in an indecent manner, the genitalia, anus, buttocks, or

---

[17] Charge Sheet.

[18] Prosecution Exhibit 1 at 8.

[19] *Id.*

[20] The appellee cites *Ferguson* for the proposition that the appellant's guilty plea to the indecent exposure specification precludes finding a substantial basis in law and fact to question the plea. Government Brief of 15 Aug 2016 at 16-18; PE 1 at 8-9; Record at 86-93. However, the assignment of error in *Ferguson* was whether Ferguson's exposure (under the indecent exposure offense delineated by the President pursuant to clauses 1 and 2 of Article 134, UCMJ (2006), *see* MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.), Part IV, ¶ 88), was in "public view" – an issue of fact. *See also Ferguson,* 68 M.J. at 435 ("Appellant pled guilty and admitted that he performed the acts . . . in public view–in a manner that could be observed by members of the public, [the victim], and others.") As such, Ferguson "relinquished his right to contest the prosecution's theory on appeal" as to whether his exposure had been in the public view. *Id.* By contrast, the issue of whether the appellant here, who transmitted a static image of his genitalia over the Internet, "expose[d]" himself within the meaning of Article 120c(c), UCMJ, is a question of law that would not have been further developed in a contested trial.

female areola or nipple is guilty of indecent exposure and shall by punished as a court-martial may direct."

We define a term in a statute based on its "ordinary meaning," the "context in which it was used, and the broader statutory context." *United States v. Pease*, 75 M.J. 180, 186 (C.A.A.F. 2016) (citation omitted). "[T]he plain language of a statute will control unless it leads to an absurd result." *United States v. Quick*, 74 M.J. 517, 520 (N-M. Ct. Crim. App. 2014) (citations omitted), *aff'd on other grounds*, 74 M.J. 322 (C.A.A.F. 2015). "In the absence of any specific statutory definition, we look to the ordinary meaning of the word." *United States v. Schloff*, 74 M.J. 312, 313 (C.A.A.F. 2015) (citations omitted). The ordinary meaning of "expose" is to "make known: [to] bring to light" or to "cause to be visible or open to view . . . as . . . to exhibit for public veneration . . . [or] to engage in indecent exposure of (oneself)."[21]

However, "'[j]ust as a single word cannot be read in isolation, nor can a single provision of a statute.'" *Quick*, 74 M.J. at 520 (quoting *Smith v. United States*, 508 U.S. 223, 233 (1993)). In *Quick*, this court held that a specification alleging that an appellant had viewed a video recording of another's private area in violation of Article 120c(a), UCMJ,[22] failed to state an offense.[23] Even though the ordinary meaning of "view" includes watching an indecent visual recording,[24] other clear statutory provisions expressly punishing the broadcasting[25] and creation[26] of indecent "record[ings]" were contrasted with "the absence of any similarly clear proscription on the viewing of indecent visual recordings," to support the holding

---

[21] Merriam-Webster, http://www.merriam-webster.com/dictionary/expose.

[22] "Any person subject to this chapter who, without legal justification or lawful authorization . . . knowingly and wrongfully views the private area of another person . . . shall be punished as a court-martial may direct."

[23] The specification at issue in *Quick* failed to state an offense because it expressly alleged that appellant violated the statute by "view[ing] a *visual recording* of the private area of" the victim." 74 M.J. at 520 n.3 (emphasis added). By contrast, the sole specification of Charge II in this case does not similarly fail to state an offense. However, the analysis in *Quick* suggests that even if Quick had been charged with viewing the private area of the victim *herself*, evidence only showing that Quick had viewed a visual recording of the victim's private area would not have been sufficient to sustain a conviction for "indecent viewing."

[24] "View . . . The act of seeing or examining." Merriam-Webster, http://www.merriam-webster.com/dictionary/view.

[25] Art. 120c(a)(3), UCMJ ("Any person subject to this chapter who, without legal justification or lawful authorization . . . knowingly broadcasts or distributes any such recording . . . shall be punished as a court-martial may direct.").

[26] Art. 120c(a)(2), UCMJ ("Any person subject to this chapter who, without legal justification or lawful authorization . . . photographs, videotapes, films, or records by any means the private area of another person . . . shall be punished as a court-martial may direct.").

that the statute did not punish simply viewing an indecent visual recording. *Quick*, 74 M.J. at 520-21.

Indeed, our superior court agrees that in interpreting a statute, "the act should not be dissected, and its various phrases considered *in vacuo*. It must be presumed that the legislature had a definite purpose in every enactment, and it is the construction that produces the greatest harmony and least inconsistency which must prevail." *United States v. Johnson*, 3 M.J. 361, 362 (C.M.A. 1977) (footnote omitted). In *Johnson,* the Court of Military Appeals rejected the argument that "the absence of language of a restrictive nature" in Article 97, UCMJ,[27] allowed for non-law enforcement personnel to be punished for false imprisonment. *Id.* at 362-63. Even though Article 97, UCMJ, on its face, applies to "[a]ny person subject to" the UCMJ, the statutory provisions "apprehends, arrests, or confines,"[28] are "terms of art" which require "reference back" to other statutes in the UCMJ for definition. *Id.* at 363.

In this "'broader statutory context," *Pease*, 75 M.J. at 186, where "'Congress includes particular language in one section of a statute but omits it in another section . . . it is generally presumed that Congress acts intentionally and purposely in the disparate . . . exclusion[,]'" *United States v. Wilson*, 66 M.J. 39, 45-46 (C.A.A.F. 2008) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)) (additional citations omitted). When Congress promulgated the current definition of indecent exposure,[29] it also defined sexual abuse of a child in Article 120b(c), UCMJ, as the commission of a "lewd act" upon a child, to include (among other conduct) intentionally exposing "one's genitalia, anus, buttocks, or female areola or nipple to a child *by any means, including via any communication technology*, with an intent to abuse, humiliate, or degrade any person, or to arouse or gratify the sexual desire of any person." Article 120b(h)(5)(B), UCMJ (emphasis added).[30] As the Army Court of Criminal Appeals (ACCA) recently observed:

> This language that expands what qualifies as an exposure is notably absent from the revised 2012, Article 120c(c), UCMJ, offense of indecent exposure. Congress' distinction between the offenses is clear when the victim is a child. Congress has indicated a strong societal interest in protecting children from pornographic images thrust upon them by predatory adults via the internet. Thus, Congress expanded

---

[27] "Any person subject to this chapter who, except as provided by law, apprehends, arrests, or confines any person shall be punished as a court-martial may direct."

[28] Even though the ordinary usage of "confine," for instance ("to hold within a location . . . imprison") is not limited to law enforcement personnel. Merriam-Webster, http://www.merriam-webster.com/dictionary/confine.

[29] National Defense Authorization Act for FY 2012, P.L. 112-81, §541, 125 Stat. 1409 (2011).

[30] *Id.*

the definition of exposure as it relates to children—eliminating the requirement for the actual display of live genitalia. That heightened societal interest, however, does not extend to adults.

*United States v. Williams*, 75 M.J. 663, 664, 667 (A. Ct. Crim. App. 2016) (considering whether Article 120c(c), UCMJ, applied to the appellant sending another adult "a digital image" of his penis via text message).

### 2. *Application*

The appellant photographed his erect penis with his cell phone camera and sent it to an undercover law enforcement agent over the internet by means of the "Kik messenger app."[31] We agree with the holding in *Williams* that this conduct is not indecent exposure under Article 120c(c), UCMJ, because indecent exposure has "a temporal and physical presence aspect . . . [and] violations occur when a victim [may be] present to view the *actual* body parts listed in the statutes, not images or likenesses of the listed parts." 75 M.J. at 666.

The appellee argues that because "expose" appears in this statute without "limiting or qualifying words requiring . . . an in-person or a temporal element," the statute necessarily criminalizes this electronic transmission of an indecent photograph or digital image.[32] However, the appellee has not provided, nor have we found, any example of a prosecution for this conduct under Article 120c(c), UCMJ. The appellee cites *Ferguson* as binding precedent where "the Court of Appeals for the Armed Forces found that indecent exposure could be accomplished via 'communication technology'" under "the older and more narrowly defined crime of indecent exposure under Article 134, UCMJ, 10 U.S.C. § 934 (2006)."[33] Yet the indecent exposure there involved an appellant "transmit[ing] *live images of himself* over the Internet, intentionally exposing his naked body and erect penis *while ejaculating* to a person he thought was a fourteen-year-old boy." *Ferguson*, 68 M.J. at 433 (emphasis added). Those facts clearly distinguish *Ferguson* from the conduct in this case, and only support the proposition that indecent exposure traditionally criminalizes certain exposures performed live before some potential audiences—and not the publication of a previous lawful exposure which is captured in a photograph.

Absent any actual precedent compelling the latter conclusion, we decline to focus on an isolated statutory provision that, if given its ordinary meaning, would violate a statutory scheme and lead to near-absurd results.[34] *See Quick,* 74 M.J. at 520-21.

---

[31] Record at 87-88.

[32] Government Brief of 15 Aug 2016 at 10.

[33] *Id.* at 11-12 (citing *Ferguson*, 68 M.J. at 433-35).

[34] Provided the circumstances met the definition of indecent, under the appellee's logic, showing other adults any commercially produced pornographic images of adult industry

Nor are we reluctant to limit the conduct proscribed by a statute when doing so is necessary to preserve a statutory scheme. *See Johnson,* 3 M.J. at 362. Here Congress expressly punished intentionally exposing one's own genitals to a child victim by any means—including any communication technology—under Article 120b(c), UCMJ, but declined to include language punishing electronic transmission of an indecent photograph or digital image to an adult, undercover law enforcement agent under Article 120c(c), UCMJ.

The appellee argues that even in the context of the statutory scheme, Congress intended to broaden the reach of the indecent exposure statute to cover conduct which it previously did not reach.[35] But even if true, that does not mean that Congress necessarily intended to criminalize actions not posing the "danger and discomfort [that occurs] when people physically expose in the presence of their victims as opposed to displaying or sending people a pornographic picture." *Williams*, 75 M.J. at 666.

As the record establishes no legally sufficient theory of how the appellant committed indecent exposure under Article 120c(c), UCMJ,[36] there is a substantial basis in law to question the providence of the appellant's plea. Beyond an abuse of discretion by the military judge in accepting the plea, we find that the appellant's actions would be legally insufficient to support an indecent exposure conviction if a rehearing was authorized, given the specific facts and circumstances in this case. Consequently, we set aside the indecent exposure conviction and consider the need for sentence reassessment. *See Ferguson*, 68 M.J. at 438 (Erdmann, J., dissenting); *see also United States v. Tate*, No. NMCCA 201200399, 2013 CCA LEXIS 221, at *13, unpublished op. (N-M. Ct. Crim. App. 12 Mar. 2013) (reassessing an appellant's sentence after finding an abuse of discretion in accepting guilty pleas to violating a lawful general regulation that was not punitive in nature).

## C. Attempted sexual abuse of a child

In Charge I, Specification 6, the appellant was accused of "attempt[ed] sexual abuse of a child by committing a lewd act" in violation of Article 120b(c), UCMJ, by

---

models, even though an accused remained fully clothed, would constitute an Article 120c, UCMJ, indecent exposure violation.

[35] *Id.* at 10-11.

[36] The appellant admitted that he took the photograph of his penis while in the barracks room, that he had a roommate, and that "it was just as likely that somebody could have walked into [the appellant's] room and observed [him] send a picture of [his] exposed penis[.]" Record at 90. We decline to find on this record that the appellant's act of photographing his penis (separate from transmitting the photo) provides an alternate factual basis for affirming the guilty plea to indecent exposure in violation of Article 120c(c), UCMJ, particularly given the appellant's observation that the roommate was "[w]ith his friends," and thus unlikely to enter the room. *Id.*

"intentionally exposing his genitalia to an individual, who [he] believed had not attained the age of sixteen years, with an intent to arouse and to gratify his sexual desire" for transmitting the same nude photo at issue in the indecent exposure specification. Although we set aside that indecent exposure specification, we find no basis in law or fact to question the providence of the appellant's plea to the attempted offense.[37] *See United States v. Estimon*, No. ACM 38598, 2015 CCA LEXIS 364, at 3, unpublished op. (A.F. Ct. Crim. App. 1 Sep. 2015) (affirming the appellant's guilty plea "to sexual abuse of a child by . . . exposing his penis to her through the use of communication technology" where the appellant had "sent [the child victim] four photographs of his naked penis, as well as a video of him masturbating"); *United States v. Long*, No 2014-02, 2014 CCA LEXIS 386, at 9, unpublished op. (A.F. Ct. Crim. App. 2 July 2014) (setting aside the appellant's conviction under assimilated state law for providing "a sexually oriented image to wit: a photograph of an erect penis" to a minor, because the conduct was covered by the Article 120b(c), UCMJ prohibition on "intentionally exposing one's genitalia . . . to a child by any means, including via any communication technology").

### D. Sentence reassessment

Immediately before the parties' sentencing arguments, the trial defense counsel made a "motion for unreasonable multiplication of charges for sentencing in relation to Specification 6 of Charge I and Charge II and its Sole Specification."[38] The prosecutor responded, "The [G]overnment doesn't object, sir. The [G]overnment would consider Spec 6 of Charge I to be the greater offense."[39] Since the military judge granted the motion and merged the indecent exposure and attempted sexual abuse of a child specifications for sentencing purposes, we find that the appellant was not prejudiced with regard to his sentence. *See United States v. Elespuru*, 73 M.J. 326, 330 (C.A.A.F. 2014).

---

[37] *Compare* MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), App. 23, at A23-16 ("Exposure, communication, and indecent conduct now include offenses committed via *any* communication technology to encompass offenses committed via the internet (such as exposing oneself to a child by using a webcam), *cell phones*, and other modern forms of communication.") (emphasis added) *with* Appellant's Brief of 15 June 2016 at 3 (arguing that the "[a]nalysis reflects nothing more than an intent to punish actual live genitalia for view by the victims"). The appellant's reading is belied by the fact that *live exposure* via webcam is identified as just one means ("such as") by which one can commit a lewd act "via any communication technology," and that "cell phones," commonly used to share digital images and recorded video via messaging, are listed as a separate communication technology.

[38] Record at 125.

[39] *Id.*

## III. CONCLUSION

The findings of guilty to Charge II and its sole specification are set aside. The remaining findings and the sentence are affirmed.

Judge RUGH and Judge HUTCHISON concur.

For the Court



R.H. TROIDL
Clerk of Court