# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

_____

**No. 201600048**

_____

### UNITED STATES OF AMERICA
Appellee

v.

### JACOB A. LASTER
Lance Corporal (E-3), U.S. Marine Corps
Appellant

_____

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Christopher M. Greer, USMC.
Convening Authority: Commander, Marine Corps Base,
Quantico, VA.
Staff Judge Advocate's Recommendation: Major Michael J. Eby,
USMC.
For Appellant: LT Jacqueline M. Leonard, JAGC, USN.
For Appellee: Lieutenant Commander Jeremy R. Brooks, JAGC,
USN; Lieutenant James Belforti, JAGC, USN.

_____

Decided 26 January 2017

_____

Before RUGH, GLASER-ALLEN, and HUTCHISON, *Appellate Military Judges*

_____

RUGH, Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of three specifications of sexual abuse of a child and once specification of indecent conduct in violation of Articles 120b and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b and 934 (2012).[1] The members sentenced

_____

[1] The members also convicted the appellant of two specifications of wrongfully enticing a minor to create child pornography in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2012). However, after findings, the military judge conditionally dismissed these two specifications as an unreasonable multiplication of charges as applied to findings. Record at 752.

the appellant to three years' confinement, total forfeiture of pay and allowances, reduction to pay grade E-1, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

The appellant now raises four assignments of error (AOE): (1) that his indecent conduct conviction is legally and factually insufficient; (2) that his conviction for sexually abusing the child Dede[2] on divers occasions is legally and factually insufficient; (3) that his conviction for sexually abusing the child Jamie on divers occasions is legally and factually insufficient;[3] and (4) that the military judge erred in the findings instructions provided to the court-martial members.[4]

We disagree, and, finding no error materially prejudicial to the appellant's substantial rights, we affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

In December 2013, the appellant returned on leave to his family's home in rural Oklahoma. His father taught seventh through twelfth-grade math at the local high school, and the appellant spent his days visiting his father's classroom. During this week, the appellant embarked on a whirlwind of inappropriate conduct with several of his father's female students.

Cybil was a 15-year-old 9th-grader who met the appellant in his father's algebra class. There, the appellant and Cybil exchanged phone numbers before he moved to sit behind her. Once there, the appellant rubbed her thigh with his foot and massaged her side and back with his hand. After class, the appellant met Cybil at her locker and asked her to text message him. Later, in the library, the appellant met Cybil and several other girls. Underneath the library study table, he attempted to grab Cybil's leg, rubbed his fingertips up her thigh, and placed her foot on his leg. She moved away, but he pursued her, trying to re-engage while she remained in the library.

---

[2] All names are pseudonyms.

[3] AOE (2) and (3) were raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] AOE IV: THE MILITARY JUDGE IS REQUIRED TO ACCURATELY INSTRUCT THE MEMBERS ON THE LAW. HERE, THE MILITARY JUDGE INSTRUCTED THE MEMBERS, "IF, BASED ON YOUR CONSIDERATION OF THE EVIDENCE, YOU ARE FIRMLY CONVINCED THAT THE ACCUSED IS GUILTY OF THE CRIME CHARGED, YOU MUST FIND HIM GUILTY." WAS THIS PLAIN ERROR? In accordance with our holding in *United States v. Rendon*, 75 M.J. 908, 916-17 (N-M. Ct. Crim. App. 2016), we summarily reject the AOE. *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992).

Despite her uncomfortable encounter in the library, Cybil agreed to trade text messages with the appellant. However, their exchanges became increasingly sexual with the appellant describing in great detail the various sexual activities he would like to perform on her. Cybil's contact with the appellant ended after the text messages were discovered by her mother.

Jamie was a 14-year-old 9th-grader when the appellant contacted her via text message after getting her phone number through his interactions with a classmate. On the last day of class before holiday break, the appellant met Jamie and several other girls in the library. As he sat across from her, the appellant rubbed Jamie's upper thigh with his foot. In response, Jamie tried to "scoot away" from the appellant.[5] But the appellant hooked his foot around the leg of her chair and attempted to pull her back towards the table. The appellant then moved his foot to another student, Katherine, placing his foot on her leg under the table.

After the holidays, the appellant returned to his duty station in Washington, D.C.; however, he continued to contact Jamie via text message. His messages became increasingly sexual, culminating in requests for pictures of her breasts and buttocks and an invitation to join him in bed.

Katherine was a 17-year-old 11th-grader. She was introduced to the appellant by his father during geometry class, but she had limited interaction with him until she met him with several other girls in the school library. While seated at a study table, the appellant hooked his foot behind Katherine's knee and pulled her towards him in her chair. He then grabbed her foot, placed it in his lap, and rubbed her leg. This interaction ended when another girl joined them at the table.

Later, Katherine and the appellant traded text messages in which they flirted and then "sexted."[6] The appellant requested Katherine send him a picture, to which she responded, "I told him I was not going to send him an inappropriate photo, and that I would prefer it if he wouldn't send me any."[7] Ignoring this appeal, and more than a week after their last "sexting" communication, the appellant sent Katherine an unsolicited message reading "nine and a half inches all for you baby" over a picture of his erect penis. Katherine's reaction was one of shock: "It came out of nowhere. There wasn't a conversation, you know, about sexual, or flirting, or anything like that. . . . I

---

[5] Record at 413.

[6] *Id*. at 515.

[7] *Id*. at 517.

didn't know how to respond . . . ."[8] Katherine reported this interaction to the appellant's father.

Dede was a 14-year-old 8th-grader when the appellant asked for her phone number at school. They connected online, and the appellant asked Dede for a "dirty picture." In response, she messaged him a picture of her wearing her sports bra but refused to send anything else more revealing. He then messaged her to "take it off" referencing her bra. She refused.[9]

Later that week, the appellant convinced Dede to meet him at night. Leaving a sleep-over with her best friend, Dede climbed out a first floor window of her parents' home, and rode in the appellant's truck to a nearby lake. Once there, the appellant kissed Dede on her neck and lips, fondled her breasts and genitals, and placed her hand on his penis.[10] He then drove her home.

As Dede exited his truck, the appellant told her "that he would be back in July . . . and that he would miss [her]."[11] Dede's best friend woke on Dede's return and found her near tears. When the best friend asked what was bothering her, Dede would only state that the appellant "was mean and she would never hang out with him again, and that [the appellant] was aggressive or forceful."[12]

## II. DISCUSSION

### A. Legal and factual sufficiency

We review questions of legal and factual sufficiency *de novo*. Art. 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

---

[8] *Id.*

[9] *Id.* at 439-40.

[10] Dede also alleged that the appellant forced her to engage in sexual intercourse. Based on this allegation, the appellant was charged with rape of a child in violation of Article 120b, UCMJ. However, the members acquitted him of this offense.

[11] Record at 449.

[12] *Id.* at 480.

The test for factual sufficiency is whether "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006) (citing *Turner*, 25 M.J. at 325 and Art. 66(c), UCMJ), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The appellant now argues that his conviction for communicating indecent language to Katherine was legally and factually insufficient because the evidence failed to prove that the language he used was indecent. In doing so, the appellant relies heavily on our holding in *United States v. Johnston*, 75 M.J. 563 (N-M. Ct. Crim. App. 2016), in which we found that a conviction for indecent exposure in violation of Article 120c, UCMJ, was factually insufficient under circumstances in which the 19-year-old appellant consensually and privately exchanged nude pictures with someone he believed was 17-years-old. We observe that his reliance on *Johnston* here is misplaced and find his indecent language conviction legally and factually sufficient.

The appellant's text message to Katherine was originally charged as indecent conduct in Specification 3 of Charge II, in violation of Article 134. During trial, the defense sought dismissal of the specification arguing that the conduct alleged—the appellant sending a picture of his genitals—was preempted by the enumerated offense, Article 120b, UCMJ, which prohibits lewd acts with persons under the age of 16 years.[13] The government countered that the specification did not include the sending of the penis picture. Consistent with that assertion, the military judge ruled that the indecent conduct alleged in the specification included only indecent language, to wit: "nine and a half inches all for you, baby."[14] He subsequently instructed the members accordingly, informing them that, to find the appellant guilty of indecent language, they must be convinced beyond reasonable doubt:

> One, that between on or about 1 December 2013, and on or about 1 March 2014, at or near . . . Oklahoma, [the appellant]

---

[13] Katherine was 17-years-old at the time of the offense.

[14] Appellate Exhibit XXVI at 12. The military judge excluded the prior occasions of "sexting" between the appellant and Katherine from the specification and did not instruct the members regarding those communications.

communicated in writing to [Katherine] certain language, to wit: "Nine and a half inches all for you, baby," or words to that effect;

Two, that the language was indecent; and,

Three, that under the circumstances, the conduct of [the appellant] was of a nature to bring discredit upon the armed forces.[15]

The military judge further instructed the members:

"Indecent language" is that which is grossly offensive to the community's sense of modesty, decency, or propriety, or shocks the moral sense of the community because of its vulgar, filthy, or disgusting nature. . . . or . . . because of its tendency to incite lustful thought.

Language is, therefore, indecent if it tends to reasonably corrupt morals or incite lustful thoughts, either expressly or by implication from the circumstances under which it is spoken. Seemingly chas[te] or innocuous language can constitute this offense if the context in which it is used sends an indecent message as reasonably interpreted by commonly accepted community standards.[16]

The determination of whether specific language is indecent cannot be made in isolation. *United States v. Green*, 68 M.J. 266, 270 (C.A.A.F. 2010) (citing to *United States v. Brinson*, 49 M.J. 360, 364 (C.A.A.F. 1998)). Instead, it must be based on an examination of "the entire record of trial to determine the precise circumstances under which the charged language was communicated." *Id.* (citations and internal quotation marks omitted)

Here those circumstances include increasingly sexual and predatory contact by the appellant with a 17-year-old high school student, beginning with aggressively flirtatious behavior in the high school library and ending with a statement regarding the size of his genitalia embossing an unsolicited picture of his erect penis. Given the surrounding circumstances, we find no reason to question the indecency of the specific utterance.

This case is easily distinguishable from *Johnston*. In that case, this court analyzed the definition of indecent exposure under Article 120c, UCMJ. However, *Johnston* should not be read to directly limit the scope of indecent language or indecent conduct as defined under Article 134, UCMJ. While

---

[15] Record at 694-95.

[16] *Id.* at 695.

some overlap exists between the term "indecent language" and the phrase "to expose, in an indecent manner," the two provisions are aimed at clearly separate forms of conduct. And while they should be read harmoniously,[17] they need not be read as wholly equivalent.[18]

Additionally, to untether the qualifier—indecent—from its subject—either exposure or language—is unhelpful. To expose one's self in an indecent manner encompasses a separate, albeit overlapping set of relevant factors from communicating indecent language. In *Johnston*, this court offered a non-exhaustive list of facts and circumstances which might make exposure indecent under the statute, including the age of the victim, whether the exposure was consensual, and whether the exposure was public or wholly private.[19] The list of circumstances that might make a specific utterance indecent may include those same three factors, but it can encompass many more—as many as may be relevant within the entire context of the utterance.

The appellant also asserts that his conviction for sexually abusing the child, Dede, was legally and factually insufficient because the evidence failed to prove this abuse occurred on divers occasions. Through his instructions to the members, the military judge identified the alleged conduct that comprised the lewd acts on divers occasions with Dede, to wit:

> Kissing her on the lips and neck, placing his hand under her underwear and touching her breasts and vaginal area, and placing her hand on his penis, requesting photographs of her nude body, [and] telling her to "take it off" after receiving a picture of her in her sports bra . . . .[20]

The appellant now argues that his acquittal on the related rape of a child charge demonstrates that the members did not believe that the other, non-penetrative sexual conduct—the kissing and fondling—occurred when the appellant drove Dede to the lake. As a result, the appellant argues he should only have been convicted based upon his lewd conduct with Dede over text messages.

---

[17] *See United States v. Quick*, 74 M.J. 517, 520 (N-M. Ct. Crim. App. 2014) ("Just as a single word cannot be read in isolation, nor can a single provision of a statute.") (citations and internal quotation marks omitted), *aff'd on other grounds*, 74 M.J. 332 (C.A.A.F. 2015).

[18] Indeed, *see United States v. Uriostegui*, 75 M.J. 857, 864 (N-M. Ct. Crim. App. 2016), in which this court distinguished indecent exposure under Article 120c, UCMJ, from lewd acts with a child including exposure under Article 120b, UCMJ, in interpreting the definition of "exposure" for purposes of Article 120c, UCMJ.

[19] 75 M.J. at 567-69.

[20] Record at 691.

The appellant's argument proceeds from a faulty premise: that a factually inconsistent verdict, standing alone, may be cause for relief. Instead, the opposite is true: "When the same evidence is offered in support of two separately charged offenses, as the physical encounters were here, 'an acquittal on one [may] not be pleaded as *res judicata* of the other.'" *United States v. Rosario*, No. 201500251, 2016 CCA LEXIS 32, at *6, unpublished op. (N-M. Ct. Crim. App. 28 Jan 2016) (quoting *Dunn v. United States*, 284 U.S. 390, 393 (1932)).

However, the issue of inconsistent verdicts should not be confused with this court's independent review of the sufficiency of evidence undertaken pursuant to Article 66, UCMJ. *United States v. Gutierrez*, 73 M.J. 172, 175 n.4 (C.A.A.F. 2014). Having carefully reviewed the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact finder could have found the appellant guilty of sexually abusing Dede on divers occasions both at the lake and over text message. Furthermore, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced beyond reasonable doubt of the appellant's guilt.

Finally, the appellant asserts that his conviction for sexually abusing the child, Jamie, was legally and factually insufficient because the evidence failed to prove that the appellant's conduct was lewd.

The military judge generally instructed the members that a lewd act was:

> A, any sexual contact with a child; B, intentionally exposing one's genitalia, anus, buttocks, or female areola or nipple to a child by any means, including via any communication technology with an intent to arouse or gratify the sexual desires of any person; C, intentionally communicating indecent language to a child by any means, including via any communication technology with an intent to arouse or gratify the sexual desires of any person; or, D, any indecent contact intentionally done with or in the presence of a child, including via any communication technology that amounts to a form of immorality relating to sexual impurity, which is grossly vulgar, obscene, and repugnant to common propriety and tends to excite sexual desire or deprave morals with respect to sexual relations.[21]

The military judge defined "sexual contact" as:

---

[21] *Id.* at 693.

[A]ny touching or causing another person to touch, either directly or through the clothing, any body part of any person if done with an intent to arouse or gratify the sexual desire of any person. Touching may be accomplished by any part of the body.[22]

The military judge also identified the alleged conduct that comprised the lewd acts on divers occasions with Jamie, to wit:

Touching her inner thigh with his foot, requesting a photograph of her butt and breasts, [and] asking her via electronic media to join him in bed . . . .[23]

Having carefully considered the record of trial and the evidence relevant to this offense, we are satisfied that a reasonable fact finder could have found the appellant guilty of sexually abusing Jamie on divers occasions. First, the manner in which the appellant used his foot to rub the Jamie's inner thigh clearly indicates that he did so with the intent to arouse or gratify his own sexual desires. Additionally, requesting pictures of the then-14-year-old girl's breasts and buttocks and inviting her, albeit from afar, to join him in his bed constituted indecent language within the precise circumstances presented here. Furthermore, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced beyond reasonable doubt of the appellant's guilt as to this offense.

## B. Incorrect court-martial order

Although not raised by the appellant, we note that the court-martial order (CMO) fails to note that the language "were to the prejudice of good order and discipline in the armed forces and" in Specification 3 of Charge II was dismissed from the specification by the military judge pursuant to RULE FOR COURTS-MARTIAL 917, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).[24] The appellant does not assert, and we do not find, any prejudice resulting from this error. Nevertheless, the appellant is entitled to have the CMO accurately reflect the results of the proceedings. *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998). We thus order corrective action in our decretal paragraph.

---

[22] *Id.*

[23] *Id.* at 691.

[24] *Id.* at 572.

### III. CONCLUSION

The findings and sentence are affirmed. The supplemental CMO shall correctly reflect that the phrase "were to the prejudice of good order and discipline in the armed forces and" was dismissed from Specification 3 of Charge II.

Judge GLASER-ALLEN and Judge HUTCHISON concur.

For the Court



R.H. TROIDL
Clerk of Court